ERICKSON v. GALLAGHER et al.

GALLAGHER et al. v. ERICKSON.

(Circuit Court of Appeals, Second Circuit. June 3, 1914.)

SHIPPING (§ 49*) — CHARTER — UNAUTHORIZED WITHDRAWAL OF VESSELS BY OWNER.

Where the owner of two scows chartered the same for a year at a monthly hire, no time being fixed in writing for its payment, the real agreement apparently being that he should be paid whenever he asked for it, which was the course followed, he was not entitled to withdraw the boats, without notice, because hire was in arrears, and is liable for the damages thereby caused to the charterers.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 48, 76; Dec. Dig. § 49.*

Cancellation, surrender, or rescission of charter of vessel, see note to McNear v. Leblond, 61 C. C. A. 569.]

Appeal from the District Court of the United States for the Southern District of New York.

On appeal from a decree of the District Court of the United States for the Southern District of New York entered April 21, 1913, in favor of the libelant appellant Erickson for $59.13.

Nelson Zabriskie, of New York City, for libelant.
Foley & Martin, of New York City, for respondents.

Before COXE and ROGERS, Circuit Judges, and MAYER, District Judge.

COXE, Circuit Judge. Erickson and Carlson were the owners of two scows, Plymouth Rock and Pilgrim, which were chartered by them in the name of Erickson to Gallagher Bros. The action is for charter hire. The defense is that the libelant withdrew the scows before the

charter expired, which the charterers allege was for the full year of 1912. They assert that by withdrawing the scows in August the libelant broke the charter and cannot recover. Because of the withdrawal Gallagher Bros. were compelled to hire other vessels at an increased cost of $850, for which sum they demand judgment. The court found that there was due the libelant $683.33 and awarded the Gallagher Bros. $633 with $8.80 interest, leaving due the libelant, Erickson, $59.13.

The Gallagher Bros. contend that the hiring was for a year and that the scows were to continue in their possession till January 1, 1913. The rates for 1912 were to be the same as for 1911 except that the rate for the Plymouth Rock was to be $105 per month till March 12, 1912 and $125 per month thereafter. The only question is whether payment was to be made on the 26th of each month and if so, had the owner the right to rescind the charter and withdraw the boats if the payment was delayed beyond that time?

We think that if there had been a time set for the payment, the rule in Tyrer v. Hessler, and in Aspinall's Maritime Cases (N. S.) 292, would apply. But there was no time fixed in writing and therefore the time of payment may be arrived at by what was said and by the conduct of the parties.

The real agreement seems to have been that the owner was to get his money whenever he asked for it. There never was any complaint regarding the payments; the owner got his money promptly and would in all probability have continued on with the charter had he not received a favorable offer for the purchase of the boats. This he accepted without a word of notice to the charterer. It seems to us that this was unfair dealing. Even if there had been an express agreement to pay on the 26th of each month the owner, by his conduct in demanding and receiving pay thereafter waived the provision and practically said, "I will call for the money when I want it."

It is unnecessary to add further to the opinion of the District Judge. The decree is affirmed with costs.